Good morning, Your Honor. Les Perry on behalf of the appellants, the Lewis family. I'd like to begin with the basic premise that there is no authority that binds insurance code section 11-580, judgment creditor, to a form selection clause. And we respectfully request that this court not do so here. And the reason for that is the basic considerations that went into the ---- Roberts, but if you're a judgment creditor, could this claim have been assigned to somebody else who had no relation to the ---- could the matter be sold? Lamic Could our ---- Roberts, the cause of action. Lamic Could our cause of action ---- Roberts, could it be assigned to somebody else? Lamic I don't ---- Roberts, because if you're a judgment creditor, then it seems to me that you stand in the shoes of the ---- of he whose debt you've assumed or he whose debt you're trying to collect. Lamic Well, that's simply not supported by the authority. There are ---- there's likewise no authority that supports the notion ---- Roberts, you do admit you're a judgment creditor. Lamic We are a judgment creditor pursuant to ---- Roberts, you're not like a third-party beneficiary. You're not an assignee. Lamic No, if we were, we would be bound by that provision. The fact that we derive our rights from a statute, a California ---- Roberts, why would a judgment creditor have broader rights than a beneficiary or an assignee? Lamic They don't have broader rights, nor are they bound by provisions that are broader than appropriate. Now, what I mean by that, if you look at the case, there's no case that holds that an 11-580 judgment creditor stands in the shoes of the ECOSMART, of the insured, for purposes of foreign selection clause or for any purpose whatsoever. Kennedy The Supreme Court seems to have been explicit in saying, look, we're not going to establish black-letter rules. There are just too many competing factors. And so you've got to look at the facts of each case. And one of the things that, for me, speaks to this case is that, I mean, in some cases, the parties are trying to say, look, I shouldn't be bound by this foreign selection clause, I'm not invoking the contract, I'm not trying to get the benefit of anything. In this case, you're trying to get the benefit of the insurance policy. Because if you don't, you can't collect anything. You've got a judgment against presumably insolvent parties. So you're trying to say this insurance policy is effective and we want to get the benefit of it. But we don't want to be bound by provisions that are within that policy. And I don't understand why you can pick and choose. Roberts Well, because that's consistent with the manner in which the stand in the shoes argument has been resolved by the courts. And the courts have said 11-580 claimants don't stand in the shoes to be bound by a provision that required the self-retention to be paid. That the insurance policy said, our responsibility to pay does not accrue until the self-retention has been ponied up. And the court held for an 11-580 claimant not bound by that provision. And likewise, I think even more significantly in the Olds case, the court held that a statute of limitations that was contained in the insurance policy, a one-year statute of limitations to pursue the judgment claim that you had, you're not bound by that. You're not bound by that statute of limitations because your claim is based upon the statute, not the- I'm looking at 11-580. And I know there's a whole argument that's been raised with regard to whether it applies because of, and at some point you may want to address how this policy was issued or delivered within the state of California. But I'm more focused for this question on what is it within 11-580 that you argue is transgressed by the Foreign Selection Clause? Because what I read in 11-580 says that you've got the ability to bring a direct action against the insurer on the policy and subject to its terms and limitations. Correct. I don't see anything there that says it's not subject to the terms and limitations or that you're allowed to bring that policy, that lawsuit where you want it. Well, you're allowed to bring it in California is our position. Well, so point to be the language in this statute that says that you have to be allowed to bring it in California. Well, the statute clearly does not say. It doesn't say that. Correct. So why isn't that a problem? Well, it's a problem because of the policies that have been addressed, have been addressed by California and by this Court, about 11-580, that the rights that are delivered, delayed, thwarted in any of these cases. Except the statute doesn't include a right to bring it in California. But if you can bring it elsewhere, suppose you could bring it in Nevada, would 11-580 say, nope, nope, nope, you're in California, you've got to bring this lawsuit, you've got to be allowed to bring this California lawsuit? I'm not sure you couldn't bring it in Nevada, but I think the law that has evolved around 11-580 is uniform, that a provision can't be written into an insurance policy that modifies it or even delays it. For example, let me put it this way, Your Honor, that I don't believe that Liberty Mutual could have written a provision in this policy that said, if an injured party gets a judgment against you, and that injured party brings an action against us as a judgment creditor, we have the right to retry whether there was liability and the amount of damages. We have the right to do that. The question, would they be able to have written that in this policy? And I believe the answer is, no, they can't, because of the ‑‑ And your argument would be that's fundamentally unfair. The substance of that is unfair. The ‑‑ yes. And there's California law that makes a point, and law from lots of jurisdictions that make that point. But your problem here is that you require us to accept as a premise that, in this case, a forum selection clause attached to a choice of law clause should be deemed fundamentally unfair. The statute doesn't say that. So you've got to get to it and can get to it if, in fact, that premise is correct. But I don't see how the statute establishes that premise is correct. It takes more than that. Why isn't your argument that on a policy to be effective in California, that it had to follow 678.1? Why isn't that your principal argument? Well, that is a ‑‑ I think the argument ‑‑ It seems to me the 11580 doesn't seem to me to be a very strong argument. The 678.1 seems to me to be a much more powerful argument. I believe 11580. You'll take what you can get. I'll take whatever I can get. Absolutely. Thank you. I agree with that. The insurance business is highly regulated, and it's not a mystery to Liberty Mutual or any other insurance company, if you sell a policy to a California insurer, you're going to be regulated in the context of that policy. You're going to be highly regulated. And the courts have said in the context, if you intend not to renew, you have to give 60 days' notice. And if you don't, there's ‑‑ Okay. Yeah. And they can't waive that. The 678 may be a constraint on the ‑‑ whether this policy actually expired on August 30th, 2014. The question that I've got is would California's 678.1 be considered in any litigation in Australia? And why aren't the Australian courts as capable of deciding whether Liberty Mutual is bound by California law, as a California court could decide? Well ‑‑ Now, I know that you had some experts on both sides testify about Australian law, and there's an Australian law that is somewhat similar to California's, but doesn't seem to provide the same ‑‑ doesn't seem to provide a remedy. It doesn't say what happens if you don't get, I think it was, 14 or 15 days' notice. And it doesn't apply if a replacement policy was put in place.  The California protections would not apply. Why not? Because, well, if they applied Australia law. If you brought a suit in Australia, why wouldn't an Australian court feel, and this is a question I'm going to ask opposing counsel, why wouldn't an Australian court feel bound to say, well, when you wrote this policy in California, you were subject to California's rules, and we will at least apply 678, whatever else we'll do in Australia under Australian rules. We will ‑‑ we will have to look to the law of California that regulated the writing of insurance in California, even though the Foreign Selection Clause and a choice of law is here. It seems a stretch, a huge stretch. I don't think that Liberty Mutual would be so interested in getting it to Australia if they thought that was even a possibility. There's the choice of law. We get asked to apply foreign law frequently. But the choice of ‑‑ I suspect the Australian courts get asked even more frequently. But they'd be looking at a policy that had both a choice ‑‑ both a Foreign Selection Clause and a choice of law provision, and they've already ‑‑ Do you know what Australia's choice of law provision is? It honors the choice of law provision. Right. But that doesn't tell you ‑‑ I'm not sure that that answers the question. I don't think we can say for ‑‑ nobody can say for certain what an Australian court would do. It certainly ‑‑ well, I mean, you took some expert witness on this. You had a couple of statements issued by Australian lawyers. Correct. And unrefuted that the Australian law is significantly different, does not provide the same level of protection. And there's the choice of law provision in the contract. There's every reason to believe that they would apply that. And it relates back to 1158. I hate to go back to one that you think might be a weak argument, but having to go to Australia with the off chance that they might decide to apply California law certainly hinders and delays and modifies the provision. But 1158, he can't mean wherever plaintiff wins, that's where this case belongs. It's got to be richer than that. I mean, we're not talking ‑‑ I hate to disparage any country now, but we're not talking, I don't know, North Korea or Zimbabwe or something. Australia's got a very highly regarded legal system that derives from the same legal system that ours does. It may not adopt all of California's policies. It will consider, I presume would consider what California has enacted and to the extent that California code applies would consider that. But I'm not sure telling me that our prospects of succeeding in Australia aren't as good or California's bent is more toward what we want as a result. I don't think that explains why this case needs to be litigated here and can't be litigated in Australia. Why does California get to tell the whole world what to do? And why doesn't California adopt something that says if you cover a claim brought by a California resident and you choose to be registered to do business in California, then you have to accept a California court? It could say that, but it doesn't. This Court in the Hastin case said virtually that. The lower court interpreted Hastin to say 1158, he simply implies an avenue for a forum. But Hastin says that the 11580, the State has a manifest interest in providing its residents with a forum. The State has a manifest interest in providing a forum. But California can't provide a forum in Australia. Australia might have a forum, but Hastin, this Court, held that when it reviewed the whole array of important fundamental policies that come about in 11580, that it can't be changed, can't be modified, can't be hindered in any way. We submit that facing a change of venue does exactly that. And my point is California cannot provide a forum in Australia. This Court says that's exactly what 11580 does. It's a venue statute. We have we, California, have a manifest interest in providing a forum. That's a far different suggestion that maybe you can go to Australia and maybe you can even pursue your rights as a judgment creditor. They don't even have you. Well, do I recall correctly that Hastin was a personal jurisdiction case? That is a misreading. With all due respect, Your Honor, that is a misreading of Hastin. That's what the Liberty Mutual has continued to maintain. Hastin was a personal jurisdiction. It dealt specifically, separately, and said it had to face separately the 11580 claim on its own and the constitutionality of that. And on all three points, the case is permeated by the fundamental, important, strong public policies that are inherent in 11580. I mean, they went on and on about the – and so it's sort of irrelevant whether it was just about personal injury, because they talked about the important public policies to give injured victims a remedy, strong state interest in regulating insurance that involves lives and limbs of the public, and ensuring that tort victims are able to reach insurers. And finally, in just a few seconds I have left, I would like to suggest that the guidance this Court recently received from the California Supreme Court on Pitzer should inform the manner in which it analyzes the public policy importance and significance of both 11580 and 670.1. I see my time is up. Okay. Thank you. Thank you, Mr. Perry. Mr. Dicanio. Good morning. May it please the Court. Jack Dicanio on behalf of Liberty Mutual. I'd like to start really where this discussion, at least in our view, should be framed, and that should be framed by the Supreme Court's decision in Brennan and its progeny that talk about the deference that Federal courts give Foreign companies are engaging in much more international business. There's going to be a need for certainty and predictability in connection with those contracts. And most of those are contracts where parties are negotiating and can reach agreement. And in those contexts, it's very difficult to set aside a forum selection clause. We're dealing here with somebody who's not a party to the contract and is told, okay, you've got a claim, sort of unremarkable. I've been injured. No real dispute, it appears, about the fact of a serious injury. And they discover there is insurance, not a huge surprise. Only the insurance requires them for this product they bought at their local store someplace, I think, what, Sonoma County, that they're expected to go like 8,000 miles away to Australia, especially ironic given that the insurance company is a and it uses a Statue of Liberty as its symbol. Doesn't that seem odd to you? It doesn't, Your Honor, if you go back and look at the factual premise of all of this. Actually, the Liberty entity that negotiated this contract was an Australian entity, and it was dealing with the parent of Ecosmart. Ecosmart was the California company. Well, I see Liberty Mutual Insurance Company here. That's the defendant. It's apparently not even separately incorporated in Australia. But, Your Honor, it was the Australian entity of Liberty Mutual selling a policy to a company called the Fire Company. The Fire Company was the parent company of Ecosmart. And was it Australian? Correct. Do we know what proportion of its business was within the United States? I don't know specifically, Your Honor, but I know that the policy covered the Fire Company, all of its subsidiaries, and geographically covered the United States, Canada, and Australia. And so those were And had separate policy provisions and limits for North American origin claims. In the second policy, Your Honor, because what happened was there was a negotiation between the Australian entity and the Fire Company, the corporate parent of Ecosmart, and they were negotiating the new policy. And Liberty, the Australian entity, decided we want to reduce our level of risk in particular with respect to these products that don't have flame arrestors. And so the parties negotiated. That became a discussion about premiums and scope of risk. And there was a limitation on the scope of coverage that went into the second policy. The parties agreed to that. All the premiums were set based upon that. And then almost 40 days later is when the accident happened to the plaintiffs. So was this policy written to Ecosmart or was it written to the Fire Company? It was written to the Fire Company. Ecosmart was listed as one of the insurers, as was all of the Fire Company subsidiaries in Australia, Canada, and in the United States. So does 678.1 have any relevance to the writing of this insurance policy? The way that I would say that, Your Honor, there is a difference in Australian law and California law with respect to the amount of notice you have to give of a material change in a policy. In California, 678.1 talks about 60 days' notice. In Australia, it's a 14-day notice period. But the statutes operate generally the same. You have to give that notice or otherwise. Yeah. California provides a remedy and Australia doesn't. My understanding is that it operates very similarly to California if you don't give notice. Would Australian courts enforce this California law under the circumstances? So, Your Honor, I could only say this, that I do know from talking to our colleagues in Australia that if the case were transferred to Australia, the Lewises, the plaintiffs would have two opportunities. They could bring this claim directly under the Australian statute. In their papers in front of the district court as well as in front of this court, they argue that only 72 hours' notice was given. Well, if that's what they believe the facts are, they could take that claim and argue it before the Australian court that Liberty has violated the notice provision and take advantage of that. They could also argue that the choice of law provision should move in favor of California law. And it's my understanding that that is a claim that they would also consider and adjudicate in Australia. It's my recollection, Your Honor, that the district court did not opine on the choice of law. Here, the Court only limited his ruling to the forum selection clause. So it's my understanding they would have the ability to make that argument in Australia. So I want to go back to Part VII, Section 58 of the Australian code. So you get the 14 days, and if you fail to comply with the 14 days, then the original contract still applies. That's my understanding. How long does it apply? I do not know that. I wouldn't want to make representations. That's the 60 days in the California statute. I don't see any limitation in the Australian statute. It's been limited by judicial interpretation. I don't know that answer precisely, Your Honor. So whether 58 or 678.1, presumably an Australian court would have to resolve whether there was some kind of a conflict between 58 and 678.1. Correct. And they would, presumably, Your Honor, they would look at traditional choice of law factors. They would look at where they believe the policy was issued or delivered. You know, it's our position, as we argued in front of the district court, that the policy was issued and delivered all in Australia. And if you look at the policy itself, it was expressed in Australian dollars, Australian currency. So it is our view, and delivered to the fire company's broker in Australia. Is the fire company insolvent? It's my understanding that they are not. And it's also my understanding that the plaintiffs could have an opportunity to move against them for the judgment that they acquired against their subsidiary. But I don't believe they've done that, Your Honor. I looked and I thought I saw something that was reported that the judgment included the fire company. I did not believe that they were insolvent, Your Honor. I thought that the bankruptcy included only Ecosmart. So is there any question as to whether the statute of limitations is run in Australia? I don't believe it has, Your Honor. And does the prior judgment, it appears to be sort of in the nature of a declaratory judgment that was previously obtained in Australia, does that have collateral estoppel effect here? My understanding is that it does not. That was only against the fire company. And it's my recollection that there was a consent decree issued. So if the plaintiffs were to go to Australia and were to argue what they argued in front of the district court and argued in front of this court that there was insufficient notice given, they would be able to present those arguments and those claims and the court would adjudicate those. I would like to go back to a question that the panel asked about 678.1. And it starts with the premise that the Supreme Court has clearly articulated the deference that's paid to foreign selection clauses. We don't believe, Your Honor, respectively, that our policy contravenes California law in any way, because California law merely just provides an avenue for relief. That avenue of relief is in Australia. The 678.1 provision, although it's in there, there is no – it's not in the statute. It's not in any judicial decision that suggests you can't waive that statute or that is a strong or compelling fundamental aspect of California public policy. And if you think about it from an international contract, it sure does make sense that two Australian parties contracting would want to understand what the notice provision is so that they could understand when they need to change or move to another insurance carrier. The whole purpose behind 678.1 is not so much for the plaintiffs here. It's really about direct insurers, so that you have some notice, some understanding of when your policy is going to change. Is there any evidence that 678.1 was waived here? It can be forfeited, but waiver usually requires a voluntary unknowing. I didn't mean it that way, Your Honor. I meant it. I might have misspoken. There is no judicial decision or statute that I'm aware of that says that 678.1 can't be waived or says 678.1 is a fundamental policy of California law. So my point is that when you're thinking about an international contract, and one of the important things is notice of policy changes, well, the parties here agreed on the Australian law applying, so 14 days is what everyone was operating under. Now, when Liberty gave notice to the fire company that we're going to make a change because we don't want to insure these risks, well, then the fire company had some options, right? They could go to another carrier. They could pay more premiums to get that coverage. They could pull the products from certain markets. Instead, they moved forward. And I think the issue from our perspective here is that what the plaintiffs are trying to do is they're trying to improve their positioning over the direct insurers. The plaintiffs here are judgment creditors. They have derivative rights. They have to accept the terms and limitations as described in 1150. Well, one of those terms is the forum selection clause. One of the terms is what's going to apply, Australian law is going to apply. Now, the plaintiffs can go to Australia and litigate all of that. Your Honor, I accept your premise. That has been my experience, that Australian courts have great due process. And that was the whole reason for the Supreme Court saying no longer are we as a nation going to say that we could only get justice here in our courts, that we have to adopt to the reality of the world that these are going to be international contracts. This is an international contract. The plaintiffs are stepping into the shoes of the direct insured here and are limited by their terms and limitations. So you're saying that the plaintiffs here have no better rights than the original signer to the contract? Pursuant to 11580, which gives them any right at all, Your Honor, that's correct. They have to set the terms and they use the terms. And there have been some statutes. You know, one of the recent cases that came down was that Gemini case that looked at an Idaho statute that basically said all contracts that are formed in Idaho have to have Idaho as a forum. That's an example of a state saying this is our public policy. If you're going to have a contract in Idaho, it's got to be litigated here. California didn't do that. California left that open. And that's what Judge Warrick in the district court decided. He said, you know, looking at this, all 1150, 11580 did was give you an avenue for relief. Well, you got that avenue of relief and it's in Australia. And that's where you should pursue it. Could California enact, let's just limit it to insurance companies. You're going to register as an insurance company to provide coverage in California or to sell policies in California that you are still obligated to accept a California forum, not just for policies that you sell and deliver here, but for claims made by California residences. So the question is, could California enact that policy? That would be very similar, I think, to the Idaho policy. It would have its downsides, right? I understand policy reasons why California might not want to do that. But if they could, then is it meaningful that the State hasn't enacted such a rule? I think it is. I think it's a recognition that companies in our State are going to be involved in international business. There's going to be a need to allow them freedom of agreement. And one of those agreements is where this issue is going to be resolved. I mean, you look at this situation, Your Honor, and you have it where you're not only insuring the parent company who's operating in Australia, you're insuring all of their subsidiaries that could operate anywhere in the United States and Canada. So those are going to be all different laws. So the parties say, let's have some certainty. Let's have some – a level of confidence in what we're doing so that our relationships can be governed by one document. And so they agree to what they agreed to in the policies. What's – I think – what I think is mistaken in the plaintiff's position here is they got a judgment against Ecosmart. Ecosmart was the tortfeasor. California gives them an ability to go after the policies of Ecosmart, but they don't acquire any more rights than Ecosmart in that whole endeavor. They step into the shoes of Ecosmart. And that's what the district court acknowledged. And in this context, that is a very fair result. And if Ecosmart were a party here, Ecosmart certainly could invoke 678.1. The CEO of Ecosmart said he got last-minute notice. He flew to Australia, wasn't real happy about the changes. And – but he gets that just within, I think, just a couple of days of the change in the policy, the expiration of the policy. So, Your Honor, I know that is the factual assertion that's made. And if that factual assertion is correct, then they'll have relief, right? They could petition for relief in Australia. We don't believe that those are the facts. I understand. So putting that aside, I would say the answer is no, because Ecosmart is the subsidiary of the fire company. The fire company is what bound itself and all of its subsidiaries to that contract. My guess is if Ecosmart was here, we'd be having a very different discussion, because it would be, well, Ecosmart, your parent – Right. We would be having a different discussion. But that – it's the same discussion that they're entitled to, isn't it? Right. But I think more to their – even more to their detriment, because then it would be even clearer. The plaintiffs are stepping into the shoes of Ecosmart. Ecosmart had to comply with the terms and limitations of the policy. So do the plaintiffs. And one of the terms of the policy is the Foreign Selection Clause. And that's very, very clear. Right. And it's all going to be a little – a little circular. But as long as – if they get to Australia, they can still raise the 678.1 question. My understanding is they could raise the conflict of law question and seek to apply California law. There are limits to the stepping into the policy argument. There are certainly cases – lots of cases that recognize at some point a result is going to be unfair or unreasonable. So if the Foreign Selection Clause said North Korea, you wouldn't be here today insisting that they got to go to North Korea. So it's ill-defined where that line is. But go back to the facts that are related at the very beginning. Why isn't it unreasonable to expect somebody who buys a product in California, a product by a company in California or the subsidiary Ecosmart, injured in California, encountering now an insolvent manufacturer, but discovering there's an insurance policy issued by Liberty Mutual with the Statue of Liberty and all those other things, why isn't it unreasonable to say you got to go down under halfway around the world to pursue your claim? I think it's for a couple of different reasons. This is not a situation where Liberty is denying coverage that is applicable or trying to get out from under its responsibilities. There were two policies here. There was the first policy and then the second policy. The second policy doesn't cover the accident that was incurred by the plaintiffs here. So it's Liberty's position that we don't have a policy. We didn't insure that risk. That's the key. Why it's fair to say that, Your Honor, is because this wasn't a situation where Liberty sold a policy directly to Ecosmart. Liberty sold that policy to Ecosmart's parent, which operates in many jurisdictions around the world. But with Ecosmart as a named insured, so it's not like Liberty didn't know there was coverage that would be provided here. True. But there were also coverage for all of the fire company subsidiaries operating in the United States, in Australia, as well as in Canada. And so I think it's very reasonable in that kind of an international contract for the parties to have some understanding of which of the many jurisdictions that could apply, should apply. And the parties will be able to decide whether or not they want to cover it. It's certainly understanding any dispute between the parties, but if you have coverage which is at least, it may have been carved out by the second policy, but at least at the time the arrangement was entered into, and for some kind of claims in the second policy as well, you know the claims are not going to be brought or the dispute isn't going to be with the fire company. You know it's going to be with an injured third party. That's the nature of manufacturing coverage. And so it's all well and good to say that, look, we strike this deal, we agree between us, which is all what Bremen's talking about, that this is where we're going to resolve our disputes. It looks very different when you're talking about a claim brought by somebody who's injured in California as opposed to Australia. But we didn't directly insure the Lewises. That might be the case if we directly insured the Lewises, we directly insured the fire company in Australia. For claims which you could anticipate would come from third parties. That's the reason for the carve-out in the second policy. They had to have been mindful of that's what much of this coverage is. We're not simply insuring the fire company for its own facilities for fire or damage or hail or whatever else. We're providing coverage against claims that will come from injured third parties for use of your product. I understand, Your Honor, but Bremen and the progeny from Bremen kind of recognize that when you have international contracts, you're going to have some of these issues. And they give deference to a farm selection clause so that at least it honors and respects the choice of the parties. What happens after in terms of the parties to the insurance contract, knowing that they're going to be claimants that aren't one of those parties? Yeah, but those claimants in the ordinary course would not have direct claims against the insurance carrier, right? Their claim would have been against Ecosmart. Ecosmart got a default judgment, I believe. And then the statute in California gave them a direct action against the insured. But the statute in California doesn't say, you know what, in this situation as a matter of policy, you could bring that type of claim in California. It only says subject to the terms and limitations. This is one of those terms. So maybe California, if California had that type of a statute, maybe we'd be a little bit more like the Gemini case in Idaho, but we're not. California was very, very clear as the limits of what a plaintiff like the Lewises can achieve in this situation. I see that I've gone over my time by quite a bit. Thank you for your patience. Happy to answer any other questions. I kind of took you there. Thank you, Mr. Picanio. Mr. Perry, I will give you time to respond. Let's put three minutes on. A couple of points. The effort to conflate the fire company and Ecosmart is, I think, being way overstated here to make the fire company the insured and everybody else is just sort of hanging out there. As the court pointed out, Ecosmart is a named insurer. So Liberty Mutual decided, although they decided while a company was sitting in Australia, they decided to insure a California company, a California company that's doing business in California, that's putting a product in the stream of commerce in California that ends up in a retail store in the community of Sonoma where California residents shop. But do you admit that if this policy had been written by Liberty Mutual directly to Ecosmart without any intervention by the fire company, acknowledging that it was a California company with a California selection clause, form selection clause, and California choice of law, but had written a second policy timely, you wouldn't have a cause of action here, would you? If they'd written the, if they'd given the proper notice? If they'd given 60 days notice, you wouldn't be here, would you? That's correct. That's correct. You just wouldn't have any recourse because it would not have been a risk that Liberty Mutual was insuring for. Correct. Okay. Correct. Okay. So this, all of this really turns on the timing of the two policies. And Australia does have a similar statute to California. It just is only limited to 14 days rather than 60 days. The problem with the Australian statute is it doesn't tell us what happens. It tells us that bad things will happen to the insurer, to the insurance company that changes the policy, but it doesn't tell us how long it goes for. Which is a... It's a new question. It could be 60 days. It could be less. An Australian court might decide to apply 678 and say, well, since you were insuring the California company, you had to comply with California rules on this. It's a fundamental question. But there's a more, there's an equally significant distinction between the statutes. California statute says you have to give that notice not only if you intend not to renew, but if you intend to substantially reduce the coverages. That provision is not in the Australian statute. And I think that's a significant difference that plays out here. And it played out on the ground. This is not just theoretical. This was a situation where the fire company, the California company, was finding itself perhaps uninsured, not getting the 60 days notice that they were entitled to in California, having to try to scramble, and ended up getting this policy that was far inferior, that under California law would not have avoided the remedy in 678.5. So the statutes are fundamentally different. And given the way it played out on the ground here, it had a real difference to these injured parties. Thank you. Okay. Thank you, Mr. Perry. We thank both counsel for the argument. Lewis v. Liberty Mutual Insurance Company is ordered submitted. With that, we've completed the calendar for the day, and the court stands adjourned.
judges: Siler, Clifton, Bybee